Silva, J.
This action is brought to recover for breach of warranties and misrepresentations arising out of the sale of a boat. The defendant, Mary A. MacDonald, is President of the defendant, Sea Lady, Inc. and in her capacity as President executed a bill of sale transferring ownership of a 1966 twenty-five foot Bertram Sportfisherman boat to the plaintiff. The plaintiff learned of the fact that the boat was for sale from Peter Maryott, of Allen Harbor Marina, who is alleged to have told the plaintiff that the boat belonged to Mr. and Mrs. Ralph MacDonald, the individual defendants. The purchase price was paid and the plaintiff received a bill of sale which indicated that the seller of the vessel was ‘ ‘ Sea Lady Inc., by Mary A. MacDonald President”. Shortly after taking possession of the boat, it sank when a temporary patch became loose.
Motions for Summary Judgment, supported by affidavits, were filed by all defendants. The plaintiff filed an affidavit in opposition and after hearing the Court entered the following order:
*153 This matter comes before the court upon the motion for summary judgment made by the defendant. The motion was considered on the basis of the complaint, the answer, the interrogatories and answers thereto, and affidavits submitted by the parties:
1. It was undisputed that the plaintiff had no contact whatsoever with the individual defendants either before, during or after the sale of the vessel which gives rise to the present complaint. See the answers of the plaintiffs to the interrogatories filed by the defendants, wherein plaintiffs admit there was no contract.
2. The bill of sale for the vessel in question runs only from the corporate defendant, Sea Lady, Inc., to the plaintiffs. There is nothing in the pleadings or other materials submitted that tends to show some sort of ratification or adoption of the transaction in such a way as to be binding upon the two individual defendants.
3. The sole factual averment of some nexus between the individual defendants and the plaintiff is the fact alleged that one Peter Maryott, a representative of Allen Harbor Marine Service, Inc. told the plaintiff that the individual defendants owned the vessel. See affidavit of George Schultz dated 23 December 1981. There is not a scintilla of evidence in the materials submitted that Maryott was even an agent for the MacDonalds individually or authorized to make representations on their behalf. Generally the out-of-court representations of agency by the supposed agent, if any, are incompetent to prove agency. Fuller v. Home Indemnity Co., 318 Mass. 37, 44 (1945)
4. The bill of sale for the vessel is executed by the defendant Mary A. MacDonald solely in her capacity as president of Sea Lady, Inc., the corporate defendant. There is no showing that the MacDonalds personally received the proceeds of the sale, or otherwise participated in the fruits of the transaction.
5. There is no scintilla of evidence in the material presented suggesting that Sea Lady, Inc. was an agent for or trustee for the MacDonalds in their individual capacity.
6. The mere possession of the boat by Maryott could not permit the inference of agency as to the individual defendants, nor does the statement in Schultz’s affidavit that ‘(he) was under the impression that all statements made to (him) by Maryott were based on information provided to him by Mr. and Mrs. Ralph MacDonald.’
7. Although no agency is inferable as against the MacDonalds, I find that a genuine issue of material fact is fairly raised as against Sea Lady, Inc. The participation in the transaction by representatives of Allen Harbor, Inc., including the bill of sale and invoice suggests there might well be an agency relationship. More importantly, the bill of sale from the corporation to the plaintiff triggers certain implied warranties and creates a number of rights and liability between the parties. See, e.g. General Laws Chapter 106, § 2-316A.
8. Contrary to the contention of the plaintiffs, insufficient facts and circumstances are presented in this case to warrant disregarding the corporate entity. (Sometimes picturesquely called ‘Piercing the corporate veil’). Further, the complaint fails to allege facts suggesting that the court ought to disregard the corporate entity. The only mention is in plaintiff’s memorandum in opposition to motion for summary judgment, which is not the functional equivalent of an affidavit.
*154 It is ORDERED that summary judgment, interlocutory in character, enter dismissing the complaint as to the defendants Mary A. MacDonald and Ralph MacDonald only. The motion for summary judgment is denied as to the defendant Sea Lady, Inc.
The purpose of summary judgment procedure under Rule 56 is to avoid the delay and expense of a trial. Kesler v. Pritchard, 362 Mass. 132 (1972). It is a ' ‘ device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved. Community National Bank v. Dawes, 369 Mass. 550 (1976).
Rule 56 (c) requires the moving party to show that there is no genuine issue of material fact and that he is entitled to summary judgment as a matter of law. Once this burden is sustained, the adverse party must allege specific facts which establish that there is a genuine, triable issue. While the motion for summary judgment can rest solely on the facts set forth in the pleadings, the court can also consider depositions, answers to interrogatories and admissions on file together with affidavits, if any. Community National Bank v. Dawes, supra.
The function of the court in ruling on a motion for summary judgment is not to make findings of fact, but rather to determine whether a genuine issue of material fact does exist. Appleton v. Hickey, 50 Mass. App. Dec. 17.
Upon review of the pleadings, the answers to interrogatories and affidavits submitted by both parties, we find no error in the allowance of the individual defendants’ motion for summary judgment.
By granting the motion, the court did not decide whether the employee of Allen Harbor Marina, Inc. was an agent of Sea Lady Inc. acting within the scope of his authority. The authority of an agent is a question of fact. Costonis v. Medford Housing Authority, 343 Mass. 108. The issue of whether the marina employee was an agent acting within the scope of his authority, thereby binding his principal, was unaffected by the court’s decision to grant summary judgment. The issue which the court disposed of, based on all of the information available, was that even if the marina employee was an agent acting within the scope of his authority, the individual defendants were not the agent’s principals.
The motion for summary judgment appears to have been allowed because there is no dispute that Sea Lady, Inc., and not the individual defendants, is the principal that could be bound if the marina employee’s acts were found to establish an agency.
The plaintiff, by affidavit, states that when he tendered the purchase price for the boat he received a bill of sale indicating that the seller was “Sea Lady, Inc., by Mary A. MacDonald, President”. The defendant, Mary A. MacDonald, by affidavit, states that she signed the bill of sale only in her representative capacity as president of the corporation. While personal liability attaches to an agent of an undisclosed principal, the agent will not be personally liable where the agency relationship is disclosed. Pike v. Sheffield, 36 Mass. App. Dec. 52. The bill of sale signed by the defendant as President of Sea Lady, Inc. put the plaintiff on notice that the principal was the defendant corporation, and that the individual defendant did not intend to be personally bound. Esso Standard Oil Co. v. Heckler and Chiungos, 20 Mass. App. Dec. 154.
The plaintiff suggests that the corporate entity theory be disregarded and that the individual defendants, as dominant personalities behind Sea Lady, Inc., be held personally responsible.
It is well settled in this Commonwealth that the court will not disregard the corporate entity unless there is shown a fraudulent purpose in organizing the *155 corporation, Gordon Chemical Co. v. Aetna Casualty & Surety Co., 358 Mass. 362 (1971); the corporation is a sham or is used to perpeturate deception or to defeat a public policy, New England Theatres v. Olympia Theatres, 287 Mass. 485 (1934); or where there is shown to have been active participation by the defendants in the wrongful acts or torts complained of, Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159 (1979); Alanson v. Scopa, 4 Mass. App. 821 (1976).
Mere ownership of all of the stock with full control over the affairs of the corporation does not make the corporation and the individual owners identical, Gordon Chemical Co. v. Aetna Casualty & Surety Co., supra.
The plaintiff has failed to establish, consistent with his burden under Rule 56 (c), specific facts which would create a genuine triable issue thereby enabling the court to pierce the corporate veil. In plaintiffs answers to interrogatories the plaintiff stated that he never had any direct discussions with either of the individual defendants. Further, there is no allegation that the corporation was organized for a fraudulent purpose, that the corporation was a sham, that the corporation’s acts were designed to defeat a public policy, or that the individual defendants actively participated in the sale of the boat. The plaintiffs only theory of liability is that the individual defendants should be liable because Maryott, the marina employee, told him that the boat was owned by Mr. and Mrs. Ralph MacDonald.
Judgment affirmed.